

CV 14 2463

Tina Wolfson, SBN 174806 (*pro hac vice* pending)
twolfson@ahdootwolfson.com
Robert Ahdoot, SBN 172098 (*pro hac vice* pending)
rahdoot@ahdootwolfson.com
Theodore W. Maya, SBN 223242 (*pro hac vice* pending)
tmaya@ahdootwolfson.com
Bradley K. King, SBN 274399 (*pro hac vice* pending)
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

Wendy R. Stein, NY Bar No. WS8050
wendy@wsteiniplaw.com
**LAW OFFICE OF WENDY R. STEIN**
5 Penn Plaza, 23rd Floor
New York, New York 10001
Tel: (212) 244-4404; Fax: (212) 849-6901

[Additional counsel listed on signature page]

*Counsel for Plaintiff and the Proposed Class*



SPATT, J.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD KAHN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>1. Violation of New York General Business Law § 349<br>2. Negligence<br>3. Fraudulent Concealment<br>4. Product Liability – Design Defect<br>5. Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*<br>6. Breach of Implied Warranties |

Plaintiff Richard Kahn ("Plaintiff"), by and through his counsel, brings this Class Action Complaint against Defendant BMW of North America, LLC ("Defendant" or "BMW"), on behalf of himself and all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.  This is a consumer protection and automotive defect class action arising out of the purchase of certain Mini Cooper vehicles designed, marketed, and sold by Defendant, including the following models: 2007 through 2010 Hardtop (R56), 2008 through 2010 Clubman (R55), and 2009 through 2010 Convertible (R57) (collectively, the "Defective Vehicles"). The Defective Vehicles have a defect within their timing chain tensioners that cost, at minimum, hundreds of dollars to fix and that can cause extensive engine damage (the "Defect").

2.  Confronted with customer complaints related to the Defect, including catastrophic engine failure, Defendant has systematically denied the existence of the Defect, and thus refused to honor any applicable warranties. As a consequence, Defendant has failed to reimburse vehicle owners for the costs they incur resulting from damages related to the failures of the timing chain tensioner, and/or refuses to provide repairs free of charge. As explained in detail below, Defendant was aware of but has failed to notify purchasers regarding the timing chain tensioner Defect, and these omissions were false, misleading, and had the capacity to deceive.

3.  Plaintiff brings claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for violations of New York General Business Law § 349, negligence, fraudulent concealment, product liability (design defect),

violations of the Magnuson-Moss Warranty Act, 15 U.SC. § 2301, *et seq.* ("MMWA"), and breach of implied warranties.

4. Plaintiff seeks an order requiring Defendant to, among other things: (1) cease the unlawful omissions; (2) conduct a corrective advertising campaign to alert the public of the defect; (3) pay damages and restitution to Plaintiff and Class members in the amounts paid to repair the Defective Vehicles; and (4) reimburse Plaintiff and Class members for the loss of value of the Defective Vehicles.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

6. The Court has personal jurisdiction over Defendant because Defendant is authorized to, and conducts substantial business in New York, generally, and this District, specifically. Defendant has marketed, promoted, distributed, and sold the Defective Vehicles in New York.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this action occurred in this District as the Defect in Plaintiff's vehicle manifested itself within this District.

## PARTIES

8. Plaintiff Richard Kahn is a resident of Merrick, New York. In December of 2009, Plaintiff purchased a new 2010 Hardtop (R56) Mini Cooper ("Plaintiff's Vehicle") from Defendant's dealership in Hassel, New York. In March of 2014, Plaintiff experienced engine damage as a result of the Defect. Plaintiff's Vehicle's engine damage was caused by the Defect.

Even though Plaintiffs' Vehicle only had slightly more than 36,000 miles on it at the time the Defect manifested itself, Defendant refused to pay for the repairs, which cost Plaintiff approximately $1,700.00.

9.  Defendant BMW of North America, LLC is a Delaware limited liability company with its principal place of business at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey, 07677. Defendant manufactures and distributes the Defective Vehicles from its foreign manufacturing plants to consumers in New York and throughout the United States.

## DEFENDANT HAS TOUTED THE TIMING CHAIN'S DURABILITY AND SUPERIOR DESIGN BUT THE FACTS SHOW THAT THE TIMING CHAINS SYSTEMATICALLY FAIL AND CAN CAUSE CATASTROPHIC ENGINE FAILURE

10. The Mini Cooper is a distinctive vehicle that has been a popular automotive icon since the 1960s. Defendant acquired Mini Cooper in 2002 and marketed it as a new class of high-end vehicles that were affordable. In 2007, Defendant released its second generation of Mini vehicles, featuring a four-stroke engine (the "Prince engine"). The Defective Vehicles were manufactured with the Prince engine.

11. Unlike most engines made for the consumer market, the Prince engine uses a metal timing chain rather than a "belt" made of composite materials. When the Prince engine was first introduced in 2004, Defendant touted the timing chain's durability compared to a timing belt, and indicated that the timing chain would remain maintenance-free throughout the full running life of the engine. One of the features of the Prince engine Defendant has promoted is that the timing chain and tensioner are located inside the engine block. However, actual road use has shown a significant drawback to this design: if the chain fails, damage to the engine can be catastrophic.

12. A defective timing chain can cause damage to the engine and present serious safety concerns. When a chain tensioner fails, the vehicle will lose all power, even while it is

in motion. Some owners have reported losing power while in traffic or driving on freeways, while others have filed complaints concerning the vehicle's safety with the National Highway Traffic Safety Administration ("NHTSA") Office of Defects. Timing chain failure can also result in engine failure, requiring a full engine replacement. The typical price to replace a defective tensioner is well over $1,000, and the price to replace an entire engine in the Defective Vehicles can exceed $10,000.

13. The Defective Vehicles timing chain tensioner can fail at any time, even if the owner follows Defendant's maintenance and service schedules. According to Defendant's warranties and maintenance program, the chain and tensioner do not require service, and the on-board computer does not monitor chain condition. Therefore, problems with the timing chain tensioner can easily go unnoticed and cause serious damage to the vehicle.

## DEFENDANT WAS AWARE OF THE DEFECT SINCE AT LEAST 2008 BUT HAS FAILED TO PUBLICLY ACKNOWLEDGE, DIAGNOSE, AND RECTIFY IT

14. Defendant knew about the Defect since at least 2008, when Defendant issued a technical service bulletin addressing the problem that year. However, following the notice, Defendant has failed to issue any recall or provide compensation for those who had already replaced their chains or paid for related engine damage. Furthermore, Defendant has ignored the plethora of consumer complaints submitted to the NHTSA citing safety concerns due to the Defect. Defendant instead has suggested that timing chain maintenance is only needed once the Defective Vehicles reach 120,000 miles.

15. Defendant provided Plaintiff with an express warranty against any "defects in materials or workmanship" in the Defective Vehicle to the first retail purchaser and each subsequent purchaser for 36 months or 36,000 miles, whichever occurs first. Defendant has purposefully concealed the Defect so that Defendant can claim that customers' written

warranty period has expired before the Defect manifests itself. Defendant's failure to disclose not only unfairly shifts the cost of repairs to Class members, but it leaves consumers unaware of the serious safety risks associated with the Defect.

16. The Defect has forced owners of the Defective Vehicles to unnecessarily risk their safety while driving the Defective Vehicles and to spend thousands of dollars in replacement and repair costs.

## THE DEFECT CAUSED PLAINTIFF'S VEHICLE TO SUFFER ENGINE FAILURE

17. In March of 2014, Plaintiff was in New York driving Plaintiff's Vehicle, which had just over 36,000 miles on it, barely exceeding the mileage and time limits on Defendant's express warranty. Without any prior warning, the vehicle's timing chain tensioner failed and the vehicle broke down.

18. Plaintiff took his vehicle to the same dealership he purchased the vehicle in Freeport, New York. The dealership's service shop told him that they would need to disassemble the engine to determine the extent of the damages. The dealership would not provide a guarantee that the repairs would be free of charge, including the cost of disassembling the engine and diagnosing the problem.

19. Plaintiff refused to authorize the dealership to commence repairs without providing any assurances and, instead, took Plaintiff's Vehicle to a private mechanic. After the private mechanic ordered the parts from Defendant and repaired Plaintiff's Vehicle, Plaintiff ultimately was responsible for approximately $1,700.00 in repairs.

## TOLLING OF THE STATUTE OF LIMITATIONS

20. All applicable statutes of limitation have been tolled by Defendant's knowing and active fraudulent concealment and denial of the facts alleged herein. Plaintiff and Class members did not discover, nor know of facts that would have caused a reasonable person to

suspect, that Defendant did not report information within its knowledge to the NHTSA or consumers, nor would a reasonable and diligent investigation have disclosed that Defendant had information in its possession about the existence and danger posed by the defect and opted to conceal that information.

21. Since the Defect cannot be detected until it manifests itself, Plaintiff and Class members were not reasonably able to discover the Defect until after purchasing the Defective Vehicles. Plaintiff and Class members could not reasonably have been expected to learn of or discover Defendant's omissions concerning the Defective Vehicles until after manifestation of the Defect, and only then because they would be forced to discover what happened to their vehicles. Therefore, the discovery rule applies to all claims asserted by Plaintiff and Class members.

22. Defendant has known about the Defect since at least 2008, if not earlier, has failed to alert Class members to the Defect, and has told Class members who reported the Defect that the mechanical failures caused by the Defect were attributable to other causes.

23. Defendant was and remains, under a continuing duty to disclose to the NHTSA, Plaintiff, and the Class the true character, quality, and nature of the Defective Vehicles; that this defect is based on dangerous, inadequate, and defective design and/or substandard materials; and that it will require repair, poses a severe safety concern, and diminishes the value of the Defective Vehicles.

24. Because of the active concealment by Defendant, any and all limitations periods otherwise applicable to Plaintiff's claims have been tolled and Defendant is estopped from relying on any statutes of limitation in its defense of this action.

## CLASS ACTION ALLEGATIONS

25. Plaintiff seeks relief in his individual capacity and seeks to represent a class consisting of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of a class initially defined as follows:

All persons who formerly or currently own or lease the following Mini Cooper vehicles in New York: 2007 through 2010 Hardtop (R56), 2008 through 2010 Clubman (R55), and 2009 through 2010 Convertible (R57).

26. Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased the Product for the purpose of resale.

27. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after they have had an opportunity to conduct discovery.

28. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The Class is so numerous that joinder of all members is unfeasible and not practicable. While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that many thousands of consumers have purchased the Products.

29. <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

  a. Whether Defendant violated New York General Business Law § 349;

  b. Whether Defendant was negligent;

  c. Whether Defendant fraudulently concealed the Defect;

  d. Whether Defendant is liable for a design defect;

  e. Whether Defendant violated the MMWA, 15 U.S.C. § 2301, *et seq.*;

  f. Whether Defendant breached its implied warranties; and

  g. The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

30. <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

31. <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

32. <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

33. <u>Injunctive and Declaratory Relief</u>. Fed. R. Civ. P. 23(b)(2). Defendant's omissions are uniform as to all members of the Class. Defendant has refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Violation of New York General Business Law § 349)

34. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

35. As fully alleged above, Defendant engaged in unfair and deceptive acts and

practices in violation of Section 349 of the New York General Business Law.

36. Reasonable consumers would be misled by Defendant's misrepresentations and/or omissions concerning the Defective Vehicles, as Defendant represented that the timing chain tensioner would last the entire life of the vehicle and failed to disclose the Defect.

37. Defendant did not inform customers of the Defect, thus misleading Plaintiff and Class members in violation of Section 349. This omission was material because Plaintiff and Class members relied on it in purchasing the Defective Vehicles. Had Plaintiff and Class members known of the Defect, Plaintiff and Class members would not have purchased the Defective Vehicles.

38. As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money.

39. Plaintiff seeks restitution and injunctive relief on behalf of the Class.

## SECOND CAUSE OF ACTION

### (Negligence)

40. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

41. Defendant had a duty to its customers as a manufacturer of motor vehicles to design, manufacture, market, and provide vehicles that, in their ordinary operation, are reasonably safe for their intended uses. Defendant had a duty to adequately test its vehicles' safety before selling millions to consumers worldwide.

42. Defendant had a duty to test vehicles for timing chain tensioner problems once Defendant was on notice that its vehicles had a propensity to have timing chain tensioner issues leading to catastrophic engine failure, which can cause bodily injury, death, and property damage. Moreover, Defendant had a duty to provide true and accurate information to the public to prevent undue risks arising from the foreseeable use of its products.

43. At all times relevant, Defendant sold, marketed, advertised, distributed, and otherwise placed Defective Vehicles into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public.

44. Defendant was negligent, and breached the above duties owed to Plaintiff and Class members.

45. As direct and proximate causes of Defendant's breaches, Plaintiff and the Class have been damaged including, but not limited to, the cost of repairs required due to timing chain tensioner problems, the financial loss of owning the Defective Vehicles that are unsafe, and being subjected to potential risk of injury.

## THIRD CAUSE OF ACTION

### (Fraudulent Concealment)

46. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

47. Defendant concealed material facts concerning the Defect before, during, and after the sale of the Defective Vehicles to Plaintiff and Class members.

48. Defendant had a duty to disclose the Defect because it was known only to Defendant, who had superior knowledge and access to the facts, and Defendant knew it was not known to or reasonably discoverable by Plaintiff and Class members. These concealed facts were material because they directly impact the safety of the Defective Vehicles. Whether a timing chain tensioner was designed and manufactured with appropriate safeguards is a material safety concern.

49. Defendant actively concealed these material facts, in whole or in part, to protect its profits and avoid a costly recall, and it did so at the expense of Plaintiff and the Class.

50. Plaintiff and the Class were unaware of these concealed material facts and would not have acted as they did if they had known of the concealed facts. Plaintiff's and Class

members' actions were justified. Defendant was in exclusive control of the material facts and the public, Plaintiffs, and the Class did not know of these facts prior to purchasing the Defective Vehicles.

51. Because of the concealment of the facts, Plaintiff and the Class sustained damage because they purchased and retained Defective Vehicles that are now diminished in value from what they would have been, had Defendant timely disclosed the Defect.

52. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiff's and Class members' rights and wellbeing, and to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## FOURTH CAUSE OF ACTION

### (Product Liability – Design Defect)

53. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

54. Defendant designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofit or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the Defective Vehicles and their component parts and constituents, which was intended by Defendant to be used as passenger vehicles and for other related activities.

55. Defendant knew that the Defective Vehicles were to be purchased and used without inspection for defects by Plaintiff and Class members.

56. The Defective Vehicles were unsafe for their intended uses by reason of defects in their manufacture, design, testing, components, and constituents, so that they would not safely serve their purpose, but would instead expose the users of the vehicles to possible serious

injuries.

57. Defendant designed the Defective Vehicles defectively, causing them to fail to perform as safely as an ordinary customer would expect when used in an intended or reasonably foreseeable manner.

58. The risks inherent in the design of the Defective Vehicles significantly outweigh any benefits of the design.

59. Plaintiff and Class members were not aware of the Defect at any time prior to the recent revelations regarding problems with the Defective Vehicles.

60. As direct and proximate causes of the Defects, Plaintiff and the Class have been damaged including, but not limited to, the cost of repairs required due to timing chain tensioner problems, the financial loss of owning the Defective Vehicles that are unsafe, and being subjected to potential risk of injury.

## FIFTH CAUSE OF ACTION

### (Violation of Magnuson-Moss Warranty Act, 15 U.SC. § 2301, *et seq.*)

61. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

62. Plaintiff and Class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

63. Defendant is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

64. The Defective Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

65. Defendant affirmed the fact, promised, and/or described in writing that the timing chain tensioner would meet a specified level of performance over a specified period of time, namely, that it would not require maintenance and last for the life of the Defective Vehicles.

Defendant's written affirmations of fact, promises, or descriptions related to the nature of the timing chain tensioner in the Defective Vehicles became part of the basis of the bargain between Plaintiff and Defendant. Defendant refuses to recognize or honor the written timing chain tensioner warranties and, indeed, denies the existence of these warranties. Defendant breached its written warranties when the Defective Vehicles did not perform as represented by Defendant and thereafter when Defendant refused to recognize or honor the warranties. Defendant's conduct thereby caused damages to Plaintiff and Class members.

66. The amount in controversy of Plaintiff's individual claim meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

67. Resorting to any informal dispute resolution procedure and/or affording Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiffs is unnecessary and/or futile. At the time of sale to Plaintiff, Defendant knew, should have known, or was reckless in not knowing of its omissions concerning the Defect, but nevertheless failed to rectify the situation and/or disclose it to Plaintiff. Moreover, the remedies available through any informal dispute resolution procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the MMWA or otherwise that Plaintiffs resort to any informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of written warranties is excused and, thereby, deemed satisfied.

68. As a direct and proximate result of Defendant's breach of written warranties, Plaintiff and Class members sustained damages and other losses. Defendant's conduct caused Plaintiff's and Class members' damages and, accordingly, Plaintiff and Class members are entitled to recover damages, specific performance, diminution in value, costs, attorneys' fees,

rescission, and/or other equitable relief as appropriate.

## SIXTH CAUSE OF ACTION

### (Breach of Implied Warranties)

69. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

70. Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and Class members purchased the Defective Vehicles.

71. The terms of that contract included the implied promises of merchantability that the product was fit for the ordinary purpose for which it was intended, *i.e.*, being safe to drive.

72. The terms of the contract also included an implied promise of fitness for a particular purpose, *i.e.*, being safe to drive, in which Defendant had reason to know the particular purpose for which Plaintiff and Class members required the vehicles and Plaintiff and Class members relied on Defendant's skill and judgment to select and furnish suitable vehicles that were fit for that purpose.

73. These implied warranties became part of the basis of the bargain, and were part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

74. All conditions precedent to Defendant's liability under these contracts have been performed by Plaintiff and the Class.

75. Defendant breached the terms of these contracts with Plaintiff and the Class, including the implied warranties of merchantability and fitness for a particular purpose, by not providing vehicles that were fit for the purpose of safe driving and were inadequately advertised due to Defendant's failure to disclose the Defect.

76. As a result of Defendant's breach of its implied warranties, Plaintiff and the Class have been damaged in the amount of the repair costs associated with the Defect, as well as

their vehicles' diminished value as a result of the Defect.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Defendant, as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B. Ordering Defendant to pay actual damages and equitable monetary relief to Plaintiff and the other members of the Class;

C. Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

D. Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective recall campaign;

E. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

F. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G. Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: April 17, 2014

Respectfully submitted,

*Wendy R. Stein*
Wendy R. Stein, NY Bar No. WS8050
**LAW OFFICE OF WENDY R. STEIN**
5 Penn Plaza, 23rd Floor
New York, New York 10001
Tel: (212) 244-4404
Fax: (212) 849-6901
Email: wendy@wsteiniplaw.com

Tina Wolfson (*pro hac vice* pending)
Robert Ahdoot (*pro hac vice* pending)
Theodore W. Maya (*pro hac vice* pending)
Bradley K. King (*pro hac vice* pending)
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111
Fax: 310-474-8585
Email: twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

John A. Yanchunis (*pro hac vice* pending)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: 813-223-5505
Fax: 813-223-5402
Email: jyanchunis@forthepeople.com

*Counsel for Plaintiff and the Proposed Class*